GARY DAVIS (SBN 098792)
Davis & Whitlock, P.C.
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622.0044
Fax: (828) 398.0435
Email: gadavis@enviroattorney.com

JAMES M. BIRKELUND (SBN 206328)
Law Offices of James Birkelund
548 Market St., # 11200
San Francisco, CA 94105
Telephone: (415) 602.6223
Fax: (415) 789.4556
Email: james@birkelundlaw.com

RACHEL S. DOUGHTY (SBN 255904)
Greenfire Law
1202 Oregon Street
Berkeley, CA 94702
Telephone: (828) 424.2005
Email: rdoughty@greenfirelaw.com


Attorneys for Plastic Pollution Coalition,
a project of Plaintiff Earth Island Institute


## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| PLASTIC POLLUTION COALITION, a project of EARTH ISLAND INSTITUTE, a non-profit organization, | Case No. _____   (___) |
|      Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** |
| v. | |
| AGRICULTURE BAG MANUFACTURING U.S.A., INC.. | (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.*) |
|      Defendant. | |

Plaintiff Plastic Pollution Coalition, a project of Earth Island Institute ("Plastic Pollution Coalition"), alleges as follows:

### NATURE OF THE CASE

1.      This is a citizen's suit, brought pursuant to the provisions of Section 505(a)(1) of the federal Clean Water Act (hereinafter "CWA"), as amended, 33 U.S.C. § 1365(a)(1), to address violations of the CWA by Defendant Agriculture Bag Manufacturing U.S.A., Inc. ("Agriculture Bag") arising out of Agriculture Bag's industrial activities at its facility located at 960 98th Avenue in Oakland, Alameda County, California (the "Facility").

2.      Agricultural Bag has demonstrated a consistent disregard for its obligations under the CWA and willingness to illegally pollute our waterways. As a result, Agricultural Bag's industrial activities have resulted in persistent harms to the public and our environment.

3.      More specifically, since at least April 22, 2009, Agriculture Bag has caused or permitted waste to be discharged, or deposited where it can be and has been discharged pollutants into waters of the State of California and the United States, resulting in the repeated and ongoing discharge of pollutants, including pre-production plastic and plastic debris, to the public storm drain which drains to San Leandro Creek, a tributary of the San Francisco Bay, in violation of 33 U.S.C. 1311(a) and the State of California's General Industrial Permit for storm water discharges, State Water Resources Control Board ("State Board") Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ and Water Quality Order No. 97-03-DWQ, NPDES General Permit No. CAS000001 ("Storm Water Permit"). Agriculture Bag has failed to comply with the requirements of the Storm Water Permit that are designed to prevent discharges of pollutants, including the monitoring, reporting, and revision of management practices of the Storm Water Permit.

4.      Plaintiff Plastic Pollution Coalition seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs (including attorney and expert witness fees) for Defendant Agriculture Bag's repeated, continuous, and ongoing violations of the CWA.

**JURISDICTION**

5.      This Court has subject matter jurisdiction over the CWA claims set forth in this Complaint pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

6.      Venue is appropriate in the Northern District of California, pursuant to Section 505(c) of the CWA, 33 U.S.C. § 1365(c), because the source of the violations is located within this judicial district.

7.      Plaintiff has complied with the pre-suit notice provisions of the CWA. Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plastic Pollution Coalition, on March 25, 2014, mailed a notice of intent to file suit under the CWA to address the violations at the Facility to:  Agriculture Bag, the U.S. Attorney General, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Director of the California State Water Resources Control Board ("State Board"), and the Executive Director of the San Francisco Bay Regional Water Quality Control Board ("Regional Board") ("March Notice"). [Attached hereto as Exhibit "A" and incorporated by reference herein.] The March Notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than 60 days have passed since the March Notice was served on Agriculture Bag and these agencies.

8.      Neither the EPA nor the State Board nor the Regional Board ("Public Enforcers") has commenced, nor is any one of the Public Enforcers diligently prosecuting, a civil or criminal action in a court of the United States to redress the violations of the CWA by Agriculture Bag. In addition, none of the Public Enforcers has commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or under a comparable California law, to redress the violations of the CWA by Agriculture Bag.

9.      Plastic Pollution Coalition will, immediately upon receipt of a file stamped copy of this Complaint, mail a copy of this Complaint to each of the Public Enforcers and the Attorney General of the United States.

COMPLAINT                                3                        U.S. DISTRICT COURT

**VENUE AND INTRADISTRICT ASSIGNMENT**

10.     Venue is appropriate in the Northern District of California, pursuant to Section 505(c) of the CWA, 33 U.S.C. § 1365(c), because the source of the violations is located in Alameda County within this judicial district.

11.     Pursuant to Civil L.R. 3-2(c) and 3-2(d) this action arising in Alameda County is appropriately assigned to either the San Francisco or Oakland Division.

**THE PARTIES**

12.     Plastic Pollution Coalition is a project of Earth Island Institute, a not-for-profit organization. Plastic Pollution Coalition is a global alliance of individuals, organizations, and businesses working towards a world free of plastic pollution and its toxic impacts. With its work, Plastic Pollution seeks to put plastic pollution at the forefront of global social, environmental, and political discourse. Plastic Pollution Coalition is headquartered in California, as is it's sponsor, Earth Island Institute, and much of Plastic Pollution Coalition's work and membership is located in California. Plastic Pollution Coalition's members work, recreate, and live on or near the San Francisco Bay ("Bay") downstream of the Facility and the Facility's discharge. Several have professional interests in the Southern portion of the Bay, including the studying and filming of wildlife near the outflow of the San Leandro Creek. Members of Plastic Pollution Coalition have been, and will continue to be, directly and substantially injured in their use and enjoyment of their property and/or in their recreational and aesthetic enjoyment of the San Francisco Bay as a direct result of Agriculture Bag's violations of the CWA. The relief sought in this case would provide redress for these injuries. Additionally, because these injuries are being caused by pollution of waters of the United States, the injuries fall within the zone of interests protected by the CWA.

13.     Plastic Pollution Coalition has standing to bring this lawsuit.

14.     Earth Island Institute is a not-for-profit, public interest, membership organization that supports people who are creating solutions to protect our shared planet. Earth Island Institute's headquarters are located in Berkeley California, which is adjacent to the San Francisco Bay. Earth Island Institute acts as an incubator for start-up environmental projects,

COMPLAINT                                        4                          U.S. DISTRICT COURT

giving crucial assistance to groups and individuals with new ideas for promoting ecological sustainability, including the Plastic Pollution Coalition. Members of Plastic Pollution Coalition are also members of Earth Island Institute, and so their injury resulting from pollution from the Facility is identical to those alleged above in paragraph 12.

15. Earth Island Institute, in its own right and through its project, Plastic Pollution Coalition, has standing to bring this lawsuit.

16. Agriculture Bag is a California corporation operating in the State of California and the County of Oakland. Agricultural Bag manufactures woven plastic textile bags at the Facility.

## STATUTORY AND REGULATORY FRAMEWORK

17. The objective of the CWA is to restore and maintain the "chemical, physical and biological integrity of [the] Nation's waters." 33 U.S.C. § 1251(a). In accordance with that objective, Section 301(a) of the CWA makes the discharge of any pollutant by any person unlawful, unless in compliance with a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

18. The State of California has been delegated the authority to implement the permitting programs of the CWA by EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b).  The State Water Resources Control Board ("SWRCB") is the water pollution control agency for purposes of the CWA, and has drafted regulations pursuant to that authority implementing the CWA's permitting programs within the State of California.

19. To implement the CWA's permitting program for discharges of storm water associated with industrial activities, the SWRCB has adopted National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 ("Storm Water Permit"). In California, any person who discharges storm water associated with industrial activity must comply with the terms of the Storm Water Permit, unless they have an individual NPDES permit covering their storm water discharges. Broadly, the Storm Water Permit prohibits discharges of materials other than storm water directly or indirectly to waters of the United States and requires covered facilities to implement pollution prevention measures to reduce

storm water pollution. The Storm Water Permit imposes a duty upon those covered by it to take all responsible steps to minimize or prevent any discharge in violation of the Storm Water Permit.

20.     Noncompliance with the Storm Water Permit constitutes a violation of the CWA and California's Porter-Cologne Water Quality Control Act. Water Code § 13160 (Water Board authorized to exercise any powers delegated to the State of California by the CWA).

21.     A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms and conditions of NPDES permits, as well as for discharges of pollutants from a facility into waters of the United States without a valid NPDES permit. 33 U.S.C. § 1365(f).

22.     The Storm Water Permit implements the requirements of the CWA through both technology-based provisions and water quality-based standards. The Storm Water Permit sets out four basic requirements for permittees: (1) effluent limitations, (2) receiving water limitations, (3) the implementation of a Storm Water Pollution Prevention Plan ("SWPPP"), and (4) the development of a Monitoring and Reporting Program ("MRP").

23.     **Effluent Limitations.** The Storm Water Permit requires that facility operators reduce or prevent pollutants associated with industrial activity through the implementation of the best available technology economically achievable ("BAT") for toxic and non-conventional pollutants and the best conventional pollutant control technology ("BCT") for conventional pollutants. [1] A facility operator can comply with this requirement by developing and implementing a Storm Water Pollution Prevention Plan ("SWPPP") that (1) complies with the requirements in Section A of the Storm Water Permit and (2) includes best management practices ("BMPs") that achieve BAT/BCT. *Id.*

---

[1] Conventional pollutants are those typical of municipal sewage, and for which municipal secondary treatment plants are typically designed as biological oxygen demand (BOD), total suspended solids (TSS), fecal coliform bacteria, oil and grease, and pH. 40 C.F.R. § 401.16. Toxic pollutants are listed by chemical in the U.S. EPA's regulations. See 40 C.F.R. § 401.15. Nonconventional pollutants are all pollutants that are not included in the list of conventional or toxic pollutants in 40 C.F.R. Part 401. Nonconventional pollutants include pollutants such as chemical oxygen demand (COD), total organic carbon (TOC), nitrogen, and phosphorus.

24.     The EPA has established benchmarks for pollutant discharges ("EPA Benchmarks"), which serve as the parameters to determine if a facility is properly implementing safeguards and procedures to prevent unlawful discharges. The EPA Benchmarks are relevant and objective standards to evaluate whether a facility has implemented the requisite BAT and BCT. Relevant to the present action, they include 100 milligrams per liter (mg/L) for total suspended solids ("TSS"), 15 mg/L for oil and grease, and a pH of between 6.0 and 9.0.

**25.**     In 2008, the California Legislature enacted California Water Code section 13367, to address storm water discharges of preproduction plastic, also known as nurdles. The Legislature, in enacting this "Nurdles Law," recognized that nurdles are a hazard to our environment and "a significant contributor of pollutants to waters of the state." The Nurdles Law establishes minimum BMPs for the industrial use and handling of pre-production plastic, including specific directions for containment of pellets during transfer and manufacture and upon the occurrence of a spill. The minimum BMPs include: containment systems at all onsite storm drain discharge locations; measures to prevent discharge of plastic pellets during loading and unloading; storage of pellets in sealed containers; installation of capture devices under transfer valves and devices during loading and unloading; and availability of a vacuum or vacuum type system for quick cleanup of fugitive plastic pellets.

26.     **Receiving Water Limits.** The Storm Water Permit prohibits the discharge of water that causes or contributes to an exceedance of any applicable water quality standard contained in a Statewide Water Quality Control Plan or applicable Regional Water Board's Basin Plan--here the San Francisco Bay Water Quality Control Plan ("Basin Plan"). The Basin Plan contains "discharge prohibitions applicable throughout the region" including prohibiting the discharge of conservative toxic and deleterious substances, above those levels which can be achieved by a program acceptable to the Regional Board, to waters of the Basin (Prohibition 6), and a prohibition on the discharge of rubbish, refuse, or other solid wastes into surface waters or at any place where they would contact or where they would be eventually transported to surface waters (Prohibition 7).

COMPLAINT                              7                    U.S. DISTRICT COURT

27.     **Storm Water Pollution Prevention Plan.** The Storm Water Permit requires that permittees develop and implement a SWPPP that meets certain requirements. The SWPPP has two major objectives: (1) to identify and evaluate sources of pollutants and (2) to identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. Among other things, a SWPPP must contain a compliance activity schedule, a description of industrial activities and pollutant sources, a description of BMPs, drawings, maps (including a site map), and relevant copies or references of parts of other plans. A permittee must evaluate and update the SWPPP with additional BMPs necessary to achieve compliance with the Storm Water Permit.

28.     **Monitoring and Reporting.** The Storm Water Permit requires a permittee to develop a Monitoring and Reporting Program ("MRP"). As part of the MRP, a permittee must conduct visual observations of storm water throughout the Wet Season; must collect water samples at each outfall during specific times; must analyze these samples for specific contaminants; and must file Annual Reports with the Regional Board summarizing the visual observations, results of sampling analysis, and Storm Water Permit compliance. The MRP should inform changes in management. Response must be taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water discharges. The SWPPP must be revised as necessary to ensure compliance with the Storm Water Permit.

## GENERAL FACTUAL ALLEGATIONS

29.     Small pieces of plastic, including the kinds of plastic debris discharged from the Facility, are deleterious to birds, fish, and other marine animals. Wildlife feed on small plastic pieces because they resemble food. Accumulation of plastic pieces in an animal's stomach cause feelings of satiation, leading in some cases to the animal's malnutrition or starvation. Plastic absorbs and accumulates on its surface pollutants such as PCBs (polychlorinated biphenyls) and flame retardants up to 100,000 to 1,000,000 times the levels found in the aquatic environment. Plastics in all sizes (microplastics and larger pieces) have been shown to be ingested by a variety of marine life, including the fish humans harvest for food. Persistent

COMPLAINT                                    8                      U.S. DISTRICT COURT

organic and bioaccumulative pollutants have been shown to transfer from plastic debris to fish tissue. Therefore, plastics in aquatic waters can contribute to the pollution of the human diet.

30.     Plastic takes decades or centuries to degrade, if it degrades at all. Degradation is slowed in cool, aquatic environments like the San Francisco Bay.

31.     In an effort to mitigate litter, including plastic pollution collected in storm sewers, California cities, towns, and taxpayers spend $428 million per year. However, the majority of trash capture best management practices employed by public agencies, such as catch basin inserts, are not designed to capture the small resin pellets like those used by Agriculture Bag.

32.     The Facility receives approximately 400,000 pounds of pelletized polypropylene per month via tanker trucks. Plastic pellets are stored in a shipping container modified to act as a holding silo. The shipping container "silo" is located out of doors. Pellets are transferred in containers to a processing area that creates strands of plastic used to weave bags.

33.     Agricultural Bag engages in industrial activities at the Facility that require it to report under and comply with the Storm Water Permit.

34.     San Leandro Creek is the receiving water to which the storm water from the Facility drains through public storm sewers. San Leandro Creek flows into San Francisco Bay. Portions of San Leandro Creek are tidal waters.

35.     San Leandro Creek is a continuously flowing stream forming geographic features depicted on official topographical maps.

36.     The discharge of pollutants into San Leandro Creek can significantly affect the chemical, physical, and biological integrity of San Leandro Creek, a navigable in fact water, as well as  navigable in fact waters downstream--namely the San Francisco Bay.

37.     San Leandro Creek and San Francisco Bay are "waters of the United States," as that term is used in the CWA and as it has been interpreted by the federal courts.

38.     San Leandro Creek has been identified by the Regional Board as failing to achieve its beneficial uses (including fish spawning, water contact recreation, and cold freshwater habitat) as a result of trash discharged to storm sewers.

39.     Discharge of storm water from the Facility is covered by the Storm Water Permit.

COMPLAINT                            9                     U.S. DISTRICT COURT

40.    Agriculture Bag has discharged and is likely to continue to discharge the following pollutants into waters of the State of California and United States via public storm sewers: plastic pellets, string, plastic debris, oil and grease, total suspended solids, and acidic substances.

41.    In 2010, the Regional Board issued a Notice of Violation and Required Additional Monitoring and Reporting ("NOV") to Agriculture Bag identifying violations of the Storm Water Permit at the Facility discovered in a Regional Board inspection on April 22, 2009. Specifically, the NOV identified as permit violations the failure of Agriculture Bag to achieve the BAT/BCT performance standard and to develop and implement at SWPPP that would ensure compliance with that standard. The NOV also identified violation by Agriculture Bag of Basin Plan Prohibition 7.

42.    The Regional Board's NOV directed Agriculture Bag to, among other things, "[m]odify berm, increase housekeeping, or implement other pellet-specific BMPs to prevent storm and non-storm discharges of plastic pellets," and to "[i]mplement additional plastic pellet source control BMPs such as secondary containment or catchment during silo loading and pellet transfers, or additional housekeeping measures such as frequent clean-up by broom or vacuum."

43.    The Regional Board's 2010 NOV directed Agriculture Bag to "[c]onduct container transfers in areas not suspect to storm water contact or with secondary containment to prevent ground contact."

44.    Agriculture Bag has not taken the steps directed by the Regional Board in its 2010 NOV to come into compliance with the Storm Water Permit.

45.    Agriculture Bag has failed to comply with the minimum BMP requirements of California's Nurdles Law.

46.    Agriculture Bag has not substantively or substantially modified its SWPPP since the 2010 NOV was issued by the Regional Board.

47.    Agriculture Bag failed to submit an Annual Report for the 2010-2011 reporting year.

48.     Agriculture Bag's discharges of solid waste and other pollutants from the Facility contribute to the violation of water quality standards in San Leandro Creek and the San Francisco Bay.

## PLAINTIFF'S CLAIMS

49.     Each of the claims asserted by Plastic Pollution Coalition below was included in the March Notice.

## FIRST CAUSE OF ACTION
### Discharges of Materials Other Than Storm Water
### in Violation of Permit Conditions and the CWA
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

50.     Paragraphs 1 - 49 of this Complaint are hereby realleged and incorporated by reference herein.

51.     Section 301 of the Clean Water Act makes unlawful "the discharge of any pollutant by any person," unless in compliance with a permit issued under the NPDES. 33 U.S.C. §§ 1311(a), 1342.

52.     Storm water from the Facility is regulated pursuant to the Storm Water Permit which prohibits discharges of materials other than storm water directly or indirectly to waters of the United States. The Storm Water Permit also prohibits the discharge of toxic and deleterious substances and rubbish, refuse, and other solid waste to any place where they would eventually be transported to surface waters.

53.     Agriculture Bag has discharged materials other than storm water, including preproduction plastic, plastic debris, oil and grease, solids, and pH-affective and specific conductivity-affective substances on a regular and continuing basis to the storm drains of the City of Oakland that discharge to San Leandro Creek and ultimately to the San Francisco Bay with each storm event.

54.     Every day Agriculture Bag discharged and continues to materials other than storm water from the Facility in violation of the Storm Water Permit is a separate and distinct violation of Sections 301(a) and section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342. These violations are ongoing and continuous.

## SECOND CAUSE OF ACTION
### Contribution to Exceedance of Water Quality Standards
### in Violation of Permit Conditions and the CWA
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

55.     Paragraphs 1 - 54 of this Complaint are hereby realleged and incorporated by reference herein.

56.     Receiving Water Limitations C(2) of the Storm Water Permit requires that storm water discharges shall not cause or contribute to a violation of any water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

57.     Since at least April 22, 2009, Agriculture Bag has been discharging polluted storm water containing rubbish and debris from the Facility, including plastic, to the storm sewers of the City of Oakland which discharge to San Leandro Creek.

58.     San Leandro Creek is listed by the state as Impaired as a result of unpermitted discharges of trash to storm sewers.

59.     The unpermitted discharge of trash from the Facility is contributing to the impairment of San Leandro Creek and the pollution of the San Francisco Bay to which San Leandro Creek discharges.

60.     Every day Agriculture Bag discharged and continues to discharge polluted storm water from the Facility in violation of the Storm Water Permit is a separate and distinct violation of Sections 301(a) and section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342. These violations are ongoing and continuous.

## THIRD CAUSE OF ACTION
### Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan
### and Monitoring and Reporting Program
### (Violations of Permit Conditions and the CWA, 33 U.S.C. §§ 1311, 1342)

61.     Paragraphs 1 - 60 of this Complaint are hereby realleged and incorporated by reference herein.

COMPLAINT                              12                        U.S. DISTRICT COURT

62.     Section A and Provision E of the Storm Water Permit require dischargers of storm water associated with industrial activity to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP").

63.     Section B of the Storm Water Permit requires that a permittee monitor storm water and revise the SWPPP to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water discharges.

64.     Agriculture Bag's Annual Reports include storm water pH samples that are more acidic than permitted by the Basin Plan and discharges of TSS and oil and grease that exceed EPA benchmark thresholds.

65.     Agriculture Bag has not described the cause of this noncompliance nor described steps that were or shall be taken to reduce and prevent recurrence of the noncompliance.

66.     Agriculture Bag has also failed to comply with the Regional Board's NOV.

67.     Agriculture Bag has failed to develop and implement an adequate SWPPP for the Facility. Agriculture Bag's ongoing failure to develop and implement an adequate SWPPP for the Facility is evidenced by, *inter alia*, Agriculture Bag's failure to implement BMPs to prevent storm and non-storm discharges of plastic pellets; its failure to conduct container transfers in areas not suspect to storm water contact or with secondary containment to prevent ground contact; its failure to implement additional plastic pellet source control BMPs such as secondary containment or catchment during silo loading and pellet transfers, or additional housekeeping measures such as frequent clean-up by broom or vacuum; and by the continued discharge of storm water pollutants from the Facility at levels in excess of EPA benchmark values and other applicable water quality standards.

68.     Agriculture Bag has failed to revise its SWPPP to address each of the violations of its Storm Water Permit listed in the previous paragraphs.

69.     Each day since April 22, 2009, that Agriculture Bag has failed to develop and implement an adequate SWPPP for the Facility, and to revise the SWPPP to address on-going pollution in violation of the Storm Water Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

**FOURTH CAUSE OF ACTION**
**Failure to Develop and Implement the Best Available**
**And Best Conventional Treatment Technologies**
**(Violations of Permit Conditions, the CWA, 33 U.S.C. §§ 1311, 1342,**
**and Water Code § 13367)**

70.     Paragraphs 1 - 69 of this Complaint are hereby realleged and incorporated by reference herein.

71.     The Storm Water Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

72.     California's Nurdle's Law establishes that minimum BMPs for facilities handling pre-production plastic must, at a minimum, include appropriate containment of pre-production plastic one millimeter and greater in diameter, use of sturdy sealed containers for pre-production plastic transfer and storage, capture devises for the event of a pre-production plastic spill, and availability of a vacuum or vacuum-type system to address spills.

73.     Agriculture Bag has failed to implement BAT and BCT at the Facility for its discharges of pre-production plastic, total suspended solids, oil and grease, pH-affective substances, and other unmonitored pollutants in violation of Effluent Limitation B(3) of the Storm Water Permit, as evidence by the NOV, visible discharge of pre-production plastic from the site, lack of stormwater elements required by the Nurdles Law, and exceedances of EPA's benchmarks, *inter alia*.

74.     Agriculture Bag has been in violation of the BAT and BCT requirements every day since at least April 22, 2009. Agriculture Bag continues to be in violation of BAT and BCT requirements each day that it fails to develop and fully implement BAT and BCT for the Facility.

75.     Each day since April 22, 2009, that Agriculture Bag has failed to develop and implement BAT and BCT in violation of the Storm Water Permit is a separate and distinct violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

COMPLAINT                                    14                          U.S. DISTRICT COURT

<strong>FIFTH CAUSE OF ACTION</strong><br>
<strong>False Certification of Compliance in Annual Report</strong><br>
<strong>(Violations of Permit Conditions and the CWA, 33 U.S.C. §§ 1311, 1342)</strong>

76.    Paragraphs 1 - 75 of this Complaint are hereby realleged and incorporated by reference herein.

77.    Agriculture Bag has falsely certified compliance with the Storm Water Permit in each of the Annual Reports submitted to the Regional Board since April 22, 2009.

78.    Each day since at least April 22, 2009, that Agriculture Bag has falsely certified compliance with the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a). Agriculture Bag continues to be in violation of the Storm Water Permit's verification requirement each day that it maintains its false certification of its compliance with the Storm Water Permit.

<strong>SIXTH CAUSE OF ACTION</strong><br>
<strong>Failure to File Annual Report</strong><br>
<strong>(Violations of Permit Conditions and the CWA, 33 U.S.C. §§ 1311, 1342)</strong>

79.    Paragraphs 1 – 78 of this Complaint are hereby realleged and incorporated by reference.

80.    Agriculture Bag failed to submit an Annual Report for the 2010-2011 reporting year.

81.    Each day since July 1, 2011, in which Agriculture Bag has failed to submit the annual report which is a requirement of its permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a). Agriculture Bag continues to be in violation of the Storm Water Permit's annual reporting requirement each day that it fails to submit the required report.

<strong>RELIEF REQUESTED</strong>

WHEREFORE, Plastic Pollution Coalition respectfully request that the Court grant the following relief:

a.    Enter a declaratory judgment that Defendant Agriculture Bag has violated and is in violation of the CWA, 33 U.S.C. §§ 1311(a) and 1342;

b.      Enter a declaratory judgment that Defendant Agriculture Bag has violated and is in violation of California's Nurdles Law, California Water Code § 13367;

b.      Order or Enjoin Defendant Agriculture Bag to cease the discharge of pollutants from point sources into waters of the United States without a valid NPDES Permit;

c.      Order Defendant Agriculture Bag to comply with all effluent limitations and other terms and conditions of coverage under its NPDES Permit;

d.      Order or Enjoin Defendant Agriculture Bag to cease discharge of pollutants into the storm drains and onto the streets of the City of Oakland;

e.      Order Defendant Agriculture Bag to pay civil penalties of up to thirty-seven thousand five hundred dollars ($37,500) per day for each day of each violation of the CWA set out in this Complaint, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d) and 1365(a);

f.      Award Plaintiff its costs, including reasonable attorney and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d);

g.      Grant such other and further relief as the Court deems just and appropriate.

Dated: September 3, 2014                          RACHEL S. DOUGHTY, ESQ.


                                         By:   /S/ Rachel S. Doughty

                                               Rachel S. Doughty, Esq.
                                               Greenfire Law

                                               GARY DAVIS, ESQ

                                               JAMES BIRKELUND, ESQ

COMPLAINT                             16                      U.S. DISTRICT COURT