# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PLASTIC POLLUTION COALITION, a project of EARTH ISLAND INSTITUTE, a non-profit organization,<br><br>     Plaintiff,<br><br>v.<br><br>AGRICULTURE BAG MANUFACTURING U.S.A., INC..<br><br>     Defendant. | Case No.  3:14-cv-03997-NC<br><br>[~~PROPOSED~~] CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §1251 *et seq.*) |

WHEREAS, Plastic Pollution Coalition ("PPC"), a project of the not-for-profit corporation Earth Island Institute, is a global alliance of individuals, organizations, and businesses working towards a world free of plastic pollution and its toxic impacts to humans, animals, and the environment, and PPC further is dedicated generally to protecting and preserving the environment;

WHEREAS, Agricultural Bag Manufacturing U.S.A., Inc. ("AgBag"), operates an industrial facility that is located in Oakland, California, at 960 98th Avenue (the "Facility"); operates under Standard Industrial Classification ("SIC") code 2393 (Textile Bags); and manufactures woven plastic textile bags utilizing approximately 400,000 pounds of pelletized polypropylene per month transported to the facility via tanker trucks;

WHEREAS, PPC and AgBag are collectively referred to as the "Parties" and each individually as a "Party";

WHEREAS, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 (State Water Resources Control Board ("State Board"), California Regional Water Quality Order No. 91-13-DWQ (as amended by Water Quality Orders Nos. 92-12-DWQ and 97-03-DWQ) until July 1, 2015 ("1997 Permit"), and Order No. 2014-0057-DWQ ("2014 Permit"), effective July 1, 2015, thereafter, and any future iterations of this permit which are adopted by the State Board and issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (collectively hereinafter the "Stormwater Permit");

WHEREAS, on March 25, 2014, PPC served AgBag, the Administrator of the Environmental Protection Agency ("EPA"), the Executive Director of the State Board, the Executive Officer of the San Francisco Bay Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA for Region 9 with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365;

WHEREAS, PPC contends in its 60-Day Notice and in its Complaint initiating this case ("Complaint") that, among other things, AgBag has repeatedly discharged polluted storm water in violation of the Stormwater Permit and the CWA, failed to sample and accurately report the results of stormwater discharges, and failed to develop and implement an adequate SWPPP with the necessary pollution control;

WHEREAS, AgBag denies that it has violated or is in violation of the CWA or the Stormwater Permit;

WHEREAS, the Parties, through their authorized representatives and without either adjudication of PPC's claims or any admission by AgBag of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full PPC's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

I.      STORMWATER CONTROL

    A.      **Compliance with Stormwater Permit**

AgBag will comply fully at all times with all conditions of the Stormwater Permit; provided, that AgBag reserves the right to argue any defenses available under the law in dispute resolution or otherwise. AgBag shall register a Notice of Intent for coverage under the 2014 Permit, by July 1, 2015. Nothing in this Consent Decree shall be interpreted to require AgBag to violate its obligations under the Stormwater Permit.

    B.      **Modification of Stormwater Management**

To prevent pollutants associated with industrial activity in stormwater discharges from the Facility, AgBag shall implement appropriate structural and non-structural BMPs. Specifically, modifications shall include, but not be limited to, the following:

        1.      **QISP**

On or before the Effective Date, AgBag shall designate a Qualified Industrial Storm Water Practitioner ("QISP"), as that term is defined in the 2014 Permit, Section IX.A, or a qualified industrial stormwater practitioner if the QISP training is not available, to assist in the Facility's implementation of BMPs necessary to achieve compliance with the Stormwater Permit and this Section I.B.

        2.      **Handling of Plastics**

Within thirty (30) days of the Effective Date and continuing thereafter during the Term of the Consent Decree, AgBag shall comply with all terms of the 2014 Permit that apply to Plastics Facilities, as that term is defined in the 2014 Permit. *See* 2014 Permit, Section XVIII.

        3.      **Revise SWPPP**

Within thirty (30) days of the Effective Date, AgBag shall, with the assistance of a QISP, or a qualified industrial stormwater practitioner if the QISP training is not available, prepare a revised SWPPP for the Facility, which shall incorporate the requirements of this Section I and

the Monitoring and Reporting Plan ("MRP") described in Section II.[1] The SWPPP shall be approved and signed by the QISP, or a qualified industrial stormwater practitioner if the QISP training is not available. Prior to implementation, the revised SWPPP shall be provided in draft form to PPC for review and comments.

## II.      MONITORING AND REPORTING PLAN

Within thirty (30) days of the Effective Date, AgBag shall prepare a MRP which shall comply fully with the Stormwater Permit in effect at the time and Section I of this Consent Decree, and which shall, in addition, include all elements required by this Section II. The requirements of this section are a condition of this Consent Decree, irrespective of AgBag's obligations pursuant to the Stormwater Permit.

### A.      Sampling

Within thirty (30) days of the Effective Date and continuing thereafter during the Term of the Consent Decree, AgBag, with QISP oversight, or a qualified industrial stormwater practitioner if the QISP training is not available, shall collect four (4) stormwater samples from Qualified Storm Events for testing each reporting year (July 1 to June 30).[2] Samples shall be taken during working hours and analyzed in accordance with the Monitoring Program and Reporting Requirements outlined in Section B of the 1997 Permit until July 1, 2015, and thereafter as outlined in Section XI of the 2014 Permit. In the event that four (4) Qualified Storm Events have not occurred by May 31 of the 2014-2015 Wet Season, AgBag shall continue to make best efforts to collect the requisite four samples from other storm events that are not proceeded by at least three working days without storm water discharges.[3] Samples shall be taken from all discharge points from the Facility from which monitoring is necessary to ensure the efficacy of the BMPs set forth in Section I above.

---

[1] Called a "Monitoring Implementation Plan" in the 2014 Permit.
[2] The term Qualified Storm Event shall have the meaning ascribed in the operative Permit.
[3] The Wet Season for the 1997 Permit is October 1 to May 31.

**B.      Testing**

During the Term of the Consent Decree, AgBag agrees to test each sample taken pursuant to Section II.A for each parameter listed in the table attached as Exhibit 1. This testing will be performed whether or not each parameter must otherwise be tested pursuant to the Stormwater Permit. All storm water samples collected pursuant to this paragraph shall be: (1) analyzed by a laboratory accredited by the State of California's Environmental Laboratory Accreditation Program (ELAP), (2) delivered to the laboratory in accordance with an appropriate protocol to ensure the integrity of the samples, and (3) analyzed with laboratory methods adequate to detect the individual constituents at or below the values specified herein.

**C.      Observation**

For the Term of the Consent Decree, from October 1 through May 31, AgBag shall inspect weekly all storm drains and BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy.

**D.      Annual Summary**

By July 15 following each reporting year (July 1 to June 30), AgBag shall compile an end-of-the-season summary that includes: (1) a storm event log at the Facility listing all dates on which Qualified Storm Events have occurred, including the date, weather conditions, time of commencement and time of cessation of precipitation; (2) a summary table/chart that lists all sample results from the immediately preceding reporting year, including results for each parameter listed in Exhibit 1; and (3) identification of any new BMPs that AgBag has implemented or will implement, as needed (collectively, the "Annual Summary").

**III.   EXCEEDANCE RESPONSE ACTIONS**

**A.      Agreement Compliance Limits**

If, during the Term of the Consent Decree, AgBag's sample and test results pursuant to Section II.B. exceed any Agreement Compliance Limits ("ACL") as set forth in Exhibit 1, AgBag shall, compile and send to PPC a Level 2 Exceedance Response Action ("Level 2 ERA") as that term is defined in the 2014 Permit, within one (1) month of the discovery of the

exceedance, and a Level 2 ERA Technical Report, within two (2) months of the discovery of the exceedance. The Level 2 ERA Technical Report shall, among other requirements:

    a)  Set forth the possible sources of AgBag's exceedance(s);

    b)  Identify and describe the revised or additional BMPs AgBag has implemented or plans to implement to reduce below the level(s) of concern the constituent concentrations associated with the exceedances;

    c)  Present a schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next reporting year;

    d)  Include a summary of all recommended revisions to the SWPPP and MRP.

PPC may object to the Level 2 ERA or Level 2 ERA Technical Report as being inadequate to address the ACL exceedance within thirty (30) days after PPC's receipt of the document to which it objects. If AgBag and PPC cannot agree upon revisions to address any shortcoming identified by PPC, then the parties shall choose a mutually acceptable QISP, at AgBag's expense, who shall resolve the dispute.[4]

## IV.    REPORTING

During the Term of Agreement, AgBag shall report to PPC each of the following by or before the date indicated:

    a)  A copy of all correspondence with and other documents related to stormwater management submitted to the Regional Board or State Board at the same time they are submitted to the Regional or State Board;

    b)  A copy of each new or revised SWPPP and MRP prepared for the Facility within fifteen (15) calendar days of its preparation;

    c)  A copy of all results of testing performed pursuant to Section II.B within fifteen (15) calendar days of AgBag's receipt of any such results;

---

[4] The terms "Level 2 Exceedance Response Action" and "Level 2 ERA Technical Report" shall have the meaning ascribed in the 2014 Permit.

d) A copy of the Annual Summary prepared pursuant to Section II.D by July 15 of each year;

e) A copy of each Level 2 ERA prepared pursuant to Section III.A within one (1) month of the discovery of each exceedance of a NAL;

f) A copy of each Level 2 ERA Technical Report prepared pursuant to Section III.A within two (2) months of the discovery of each exceedance of a NAL.

V.   INSPECTIONS

AgBag shall allow PPC (i.e., PPC's attorneys, consultants, or other designated representatives) to inspect the Facility two (2) times each calendar year. The first inspection shall be within thirty (30) days after the Effective Date. PPC shall provide AgBag with at least three (3) business days' written notice of proposed inspection dates and the Parties shall work together to select a mutually agreeable inspection date and time.

VI.   MITIGATION, FEES, AND COSTS

A.   Environmental Mitigation Funding

As mitigation for the alleged violations set forth in PPC's Notice and Complaint, AgBag shall pay the sum of eighteen thousand dollars ($18,000), payable in four monthly payments of four thousand five hundred dollars ($4,500) to the Rose Foundation ("Foundation"), an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed. Payment shall be delivered to Rose Foundation, 1970 Broadway, Suite 600, Oakland, CA 94612-2218, with notice to PPC. The Foundation shall report the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds. The first of the four payments shall be due within thirty (30) days of the Entry Date; the second within sixty (60) days of the Entry Date; the third within ninety (90) days of the Entry Date; and the fourth and final mitigation payment due within one hundred twenty (120) days of the Entry Date.

### B.  Stipulated Payments

AgBag agrees to pay the following stipulated payments during the Term of this Agreement: (a) two thousand dollars ($2,000) for each failure to collect a sample of Qualified Storm Events required under this Settlement Agreement during the reporting year beginning with the 2014-2015 reporting year; (b) the expenditure of one thousand dollars ($1,000) each time an ACL is exceeded to improve BMP's at the facility designed to address the ACL exceedance consistent with Section III.A. of the Consent Decree; and (c) in the event that AgBag fails to submit to PPC any document, report or other communication required in this Agreement by its due date, AgBag shall pay a per day late payment of two hundred dollars ($200) per day after the report due date. AgBag shall incur a two hundred dollar ($200) per day penalty for every business day after five (5) days past the due date that AgBag fails to submit any payments due pursuant to this Agreement. Any stipulated payments described above shall be paid by September 1st of each year to the Rose Foundation, to fund projects that benefit water quality in the San Francisco Bay watershed.[5]

### C.  Reimbursement of Fees and Costs

AgBag shall reimburse PPC in the amount of forty-nine thousand five hundred dollars ($49,500) payable in four monthly payments of twelve thousand three hundred seventy-five dollars ($12,375), to help defray PPC's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to AgBag's attention, filing suit, and negotiating a resolution of this action in the public interest. AgBag shall tender said payment, payable to the Law Offices of James Birkelund Attorney Client Trust Account in Trust for PPC, upon the same dates that each of the mitigation payments described in Section VI.A is due.

---

[5] In the event that the Consent Decree is not entered by September 1 of a year in which stipulated payment obligations are incurred, then any such payment shall be made within thirty (30) days of the Entry Date.

D.      **Compliance Monitoring Funds**

As reimbursement for PPC's future fees and costs that will be incurred in order for PPC to monitor AgBag compliance with this Agreement and to effectively meet and confer and evaluate monitoring results for the Facility, AgBag shall reimburse PPC four thousand dollars ($4,000) each year for a total of twelve thousand dollars ($12,000) for costs and fees associated with monitoring AgBag's compliance with this Consent Decree over the next 36 months, including to reimburse PCC for the costs and fees of site visits to the Facility. The compliance monitoring fund payment shall be made to PPC for each year of the three years covered by the Consent Decree. The initial payment of four thousand dollars ($4,000) shall be paid within thirty (30) days after the Entry Date. Each subsequent payment shall be due by the first day of the year to which it applies (January 1, 2016 and January 1, 2017) AgBag agrees to tender payment due pursuant to this Section VI.D payable to the Law Offices of James Birkelund Attorney Client Trust Account. Future compliance monitoring activities may include, but are not limited to, review of water quality sampling reports, review of annual reports, discussions with representatives of AgBag, inspections, and potential changes to compliance requirements and other compliance-related activities.

VII.    **JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE CONSENT DECREE**

A.      **Jurisdiction**

For the purposes of this Consent Decree, the Parties stipulate that the United States District Court for the Northern District of California has jurisdiction over the Parties and subject matter of this Consent Decree.  The Parties stipulate that venue is appropriate in the Northern District of California and that AgBag will not raise in the future, as part of enforcement of this Consent Decree, whether PPC has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

B.      **Submission of Consent Decree to DOJ**

Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, PPC shall lodge this Consent Decree with the Court and submit this Consent Decree to

the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R.

§135.5. The agency review period expires forty-five (45) calendar days after receipt by the DOJ,

evidenced by correspondence from DOJ establishing the review period. In the event DOJ

comments negatively on the provisions of this Consent Decree, the Parties agree to meet and

confer to attempt to resolve the issues raised by DOJ.

## VIII.   RELEASES

### A.   Mutual Release; Covenant Not to Sue

Each Party and its officials, agents, representatives, officers, directors, employees,

successors, subsidiaries, parent companies, affiliated companies and assigns hereby releases and

covenants not to sue the other Party and its officials, agents, representatives, officers, directors,

employees, successors, subsidiaries, parent companies, affiliated companies and assigns for any

claim, demand, or cause of action, concerning the Facility, including but not limited to CWA,

stormwater discharges and permit violations, whether known or unknown, asserted or unasserted,

which accrued at any time, or which could have been claimed in this Action, prior to the

Effective Date.  This release and covenant not to sue specifically includes, but is not limited to,

claims for civil penalties, attorneys' fees and costs, and declaratory or injunctive relief.

### B.   Civil Code Section 1542

To the extent the Court finds that California Civil Code Section 1542 applies to this

Consent Decree, the Parties expressly waive any rights or benefits available to them under the

provision of California Civil Code Section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor.

### C.   Dismissal of Complaint

Upon the Effective Date, the Parties shall file with the Court a Stipulation and Order that

shall provide that the Complaint and all claims therein shall be conditionally dismissed pursuant

to Federal Rule of Civil Procedure 41(a)(2), subject to the Court's continuing jurisdiction to enforce this Consent Decree.

### D.    Dispute Resolution and Retention of Right to Enforce

If a dispute under this Consent Agreement arises, or either Party believes that a breach of this Consent Agreement has occurred, the Parties shall meet and confer within fourteen (14) days of receiving written notification from the other Party of a request for a meeting to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least fourteen (14) days have passed after the meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of California, Northern District, which shall retain jurisdiction over this lawsuit for the limited purposes of enforcement of the terms of this Decree. Notwithstanding any release in this Agreement, each party to this Agreement reserves all legal and equitable remedies available to enforce this Agreement. The parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provisions.

## IX.    MISCELLANEOUS PROVISIONS

### A.    Effective Date, Entry Date, and Term of Consent Decree

The Effective Date of this Consent Decree shall be upon the execution of this agreement by the parties. This Consent Decree shall continue in effect from the Entry Date ("Term of Consent Decree") until all obligations associated with the 2016-2017 reporting year, have been fulfilled, at which time the Consent Decree, and all obligations under it, shall automatically terminate. The Entry Date shall be the date upon which the Court enters this Consent Decree.

### B.    Force Majeure Event

No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any

circumstances beyond the Party's control, including, without limitation, any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24-hour storm event, or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

## C.      No Admission of Liability

The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and AgBag expressly does not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by AgBag of any fact, finding, conclusion, issue of law, or violation of law.

## D.      Full Settlement

This Consent Decree constitutes a full and final settlement of this matter.

## E.      Authority to Sign, Execution, Construction

The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood, and agreed to all of the terms and conditions of this Consent Decree. All agreements, covenants, representations, and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein. The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document. The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission in portable document format (PDF) shall be deemed binding. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel. The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be

construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party. This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

### F.      Severability

In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected. No delay or omission in the exercise of any right or remedy accruing to any Party shall impair such right or be construed as a waiver of any such breach theretofore or thereafter occurring. The waiver by a Party of any breach of any term, covenant, or condition herein stated shall not be deemed to be a waiver of any other term, covenant, or condition.

### G.      Assignment

Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties, and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

### H.      Notices and Correspondence

Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the email addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail or overnight delivery with return receipt, fax, or by hand delivery to the following addresses:

**For PPC:**

Rachel Doughty
1202 Oregon Street
Berkeley, CA 94702
Email: rdoughty@greenfirelaw.com

**For AgBag:**

Michael Kuo, CEO
Agriculture Bag Manufacturing, Inc.
960 98th Avenue
Oakland, CA 94603
Email:  chkbag@hotmail.com

*With copies sent to*:                          *With copies sent to*:

James Birkelund                                 Nathan Metcalf
548 Market St., #11200                          425 Market Street
San Francisco, CA 94104                         San Francisco, CA 94105
Email: james@birkelundlaw.com                   Email: nmetcalf@hansonbridgett.com
Fax: 415.789.4556                               Fax: 415-995-3562

Notifications of communications shall be deemed submitted on the date that they are emailed or faxed or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

**I.      Choice of Law**

This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California, without regard to its conflict of laws provisions.

**J.      Best Efforts**

If for any reason the DOJ or the District Court should object to this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court, while preserving to the maximum extent the substantive obligations set forth in this proposed consent decree. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

**Plastic Pollution Coalition**

Date: January ____, 2015

_____

Dianna Cohen
CEO, Plastic Pollution Coalition

Date: January 16 2015

_____

John A. Knox
Vice President and Executive Director
Earth Island Institute

**Agriculture Bag Manufacturer U.S.A., Inc.**

Date: January 21 , 2015

_____

Michael Kuo
CEO

In accordance with the Consent Decree, all claims in the complaint are conditionally dismissed under Federal Rule of Civil Procedure 41(a)(2), with the Court retaining jurisdiction to enforce the Consent Decree. As the Consent Decree fully resolves this case, the Clerk of the Court is ordered to terminate this case.

APPROVED AND SO ORDERED, this _9th_ day of __March 2015_____.

UNITED STATES DISTRICT JUDGE



GRANTED

Judge Nathanael M. Cousins

**Exhibit 1: Agreement Compliance Limits (ACL)**

**ACLs for 2014-2015 Reporting Year**

| Pollutant | Agreement Compliance Limit |
|---|---|
| Total Suspended Solids ("TSS") | 100 mg/L |
| Oil and Grease | 15 mg/L |
| pH | Less than 6.0; Greater than 9.0 s.u. |

**ACLs for All Reporting Years *Subsequent* to 2014-2015 Reporting Year**

| Pollutant | Agreement Compliance Limit |
|---|---|
| Total Suspended Solids ("TSS") *Annual exceedance | 100 mg/L |
| Oil and Grease *Annual exceedance | 15 mg/L |
| pH *Instantaneous maximum exceedance | Less than 6.0; Greater than 9.0 s.u. |

\* Annual and instantaneous maximum exceedances shall have the meaning provided in the 2014 Permit, Section XII.A, for annual Numeric Action Levels ("NAL") and instantaneous maximum NAL exceedances, respectively.

Exhibit 1